Richard GARNETT, By and Through his next friend, Peggy SMITH; Scott Germino; Robert Ryan, By and Through his next friend, Jack Ryan; Richard Tracy, By and Through his next friend, Michael Tracy; Stephen M. Hanning, a minor, by Mr. and Mrs. Bruce Sharp, his Guardians Ad Litem; Tanya M. Hanning, a minor, by Mr. and Mrs. Bruce Sharp, her Guardians Ad Litem;

---

Robert M. Mayer, a minor, by Mr. and Mrs. Michael L. Mayer, his Guardians Ad Litem; Jaime R. Mayer, a minor, by Mr. and Mrs. Michael L. Mayer, her Guardians Ad Litem, Plaintiffs–Appellants,

v.

RENTON SCHOOL DISTRICT NO. 403; Robert N. Anderson, in his official capacity; Brian Baker, in his official capacity; John G. Dubois, in his official capacity; Marcia K. Holland, in her official capacity; Donald Jacobson, in his official capacity; Gary F. Kohlwes, in his official capacity; Margarita Prentice, in her official capacity, Defendants–Appellees.

No. 91–36036.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1993.

Decided March 8, 1993.

Michael Stokes Paulsen, Minneapolis, MN, Michael W. McConnell, Mayer, Brown & Platt, Chicago, IL, for plaintiffs-appellants.

I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendants-appellees.

R. Broh Landsman, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, WA, for the amicus Anti–Defamation League.

Marc D. Slonim, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, for the amicus American Civil Liberties Union of Washington Foundation; William D. Hochberg, Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz, Seattle, WA, for

the amicus American Jewish Committee and Church Council of Greater Seattle.

Lowell V. Sturgill, Jr., U.S. Dept. of Justice, Washington, DC, for the amicus U.S.

Before: WRIGHT, FARRIS, and KLEINFELD, Circuit Judges.

FARRIS, Circuit Judge:

## FACTS

In the fall of 1984, several students at Lindbergh High School in Renton, Washington, sought permission from school officials to form a religious club. The students requested permission to meet on school grounds before school for prayer, Bible study and religious discussion. The school district permits a number of other student groups to meet on school grounds during noninstructional time, including such groups as the Pep Club, Chess Club and Ski Club. The school district denied the students' request, citing its view that such meetings would violate both the Washington state and federal Constitutions.

The students brought suit claiming that the district's refusal to let them meet on school grounds violated their statutory and constitutional rights to equal access. The students argued that the Equal Access Act, 20 U.S.C. §§ 4071–4074 (1988), requires Lindbergh to allow them to meet at school on the same basis as other noncurriculum related clubs. The students also argued that the Free Speech, Free Exercise, Free Association, Equal Protection and Due Process Clauses protect their right to meet on school grounds.

The Equal Access Act provides that [i]t shall be unlawful for any public secondary school which receives Federal fi-

nancial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings.

20 U.S.C. § 4071(a). A "limited open forum" exists "whenever [a] school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." *Id.* at § 4071(b).

The district court held that the Equal Access Act does not apply to Lindbergh because the school did not have a "limited open forum". *Garnett v. Renton School District #403*, 675 F.Supp. 1268, 1274 (W.D.Wash.1987). The court held that the Washington State constitution bars the school officials from permitting religious organizations to meet on school property. The district court rejected all of the students' constitutional claims. *Id.* at 1276.

We affirmed. 865 F.2d 1121, *modified,* 874 F.2d 608 (9th Cir.1989). We held that allowing the students to meet at school would violate the Establishment Clause. The Supreme Court vacated our decision and remanded for reconsideration in light of its holding in *Board of Education v. Mergens,* 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). *Garnett v. Renton School District,* 496 U.S. 914, 110 S.Ct. 2608, 110 L.Ed.2d 628 (1990).[1] We remanded to the district court.

The district court, 772 F.Supp. 531, concluded that by allowing several "noncurriculum" related student groups to meet on school grounds, the school had created a limited open forum. The court held, however, that the Washington State Constitution precludes the Act from requiring the use of school premises by a religious club. The court reasoned that the EAA does not

---

**1.** Because our decision is controlled by the EAA, we do not reach the students' claim that their rights under the Free Speech and Free Exercise Clauses of the First Amendment were violated. We need not revisit our prior resolution of these issues in *Garnett v. Renton School Dist. No. 403,*

865 F.2d 1121, *modified,* 874 F.2d 608 (9th Cir. 1989), because, that decision having been vacated by the Supreme Court, it "has no precedential authority whatsoever." *Durning v. Citibank, N.A.,* 950 F.2d 1419, 1424 n. 2 (9th Cir. 1991). This decision entirely replaces it.

preempt the Washington State Constitution because the Act does not require actions that would abridge "constitutional" rights or violate the law. The students appeal the district court's decision on remand.

We Reverse.

## DISCUSSION

This appeal involves questions of law which we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Under the EAA, "if a public secondary school allows only one 'noncurriculum related student group' to meet, the Act's obligations are triggered and the school may not deny other clubs, on the basis of the content of their speech, equal access to meet on school premises during noninstructional time." *Mergens*, 496 U.S. at 236, 110 S.Ct. at 2364. The district court concluded that there were eleven noncurriculum related student groups at Lindbergh High School. The court therefore found that the school had a "limited open forum" under the EAA.

Nonetheless, the district court held that Lindbergh could not permit the students to meet because the Washington State Constitution prohibits student religious meetings on school grounds. The court held that the EAA did not preempt the Washington State Constitution.

The Supremacy Clause provides that if federal law conflicts with state law, federal law prevails:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Article VI, section 2. The Supreme Court has explained that,

> [i]n the absence of explicit statutory language signaling an intent to preempt [state law], we infer such intent where ... the state law at issue conflicts with

federal law, either because it is impossible to comply with both ... or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives....

*Northwest Central Pipeline v. Kansas Corp. Com.*, 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509 (1989). The EAA does not explicitly preempt state law. The district court held that because the Washington constitution does not conflict with the EAA, the court would not infer that Congress intended to preempt state law.

The district court held that sections 4071(d)(5) and (7) of the Act allow school officials to comply with state statutory and constitutional provisions. Sections 4071(d)(5) and (7) provide that "[n]othing in [the EAA] shall be construed to authorize the United States or any State or political subdivision thereof ... (5) to sanction meetings that are otherwise unlawful; [or] ... (7) to abridge the constitutional rights of any person." The district court held that religious group meetings were "otherwise unlawful" and unconstitutional within the meaning of sections 4071(d)(5) and (7), because such meetings violate the Washington constitution.

The students argue that sections 4071(d)(5) and (7) do not allow state law to override the EAA's requirements. They argue that Congress intended section 4071(d)(5) merely to clarify that the Act does not require school districts to permit student meetings that would be illegal for reasons other than their religious nature. They argue that section 4071(d)(7) only clarifies Congress' intent that the Act not be construed to limit *federal* constitutional rights.

▪ The dispute over the applicability of the EAA thus turns on the meaning of §§ 4071(d)(5) and (7). We begin with the plain language. *Mergens*, 496 U.S. at 237, 110 S.Ct. at 2365. Section 4071(a), the central provision of the Act, prohibits "any public secondary school" which receives federal funding and which has a limited open forum from denying religious student groups equal access. Sections 4071(d)(5)

and (7) are designated as rules of construction, not exceptions to the Act. As such, they instruct the court how to interpret the Act's central command that schools not discriminate against religious speech.

■ While section 4071(a) prohibits discrimination against a group on account of the religious character of its speech, it does not protect speech that is "otherwise unlawful" (section 4071(d)(5)). The school board's contention that section 4071(d)(5) permits states to bar meetings on campus because of their religious content renders the term "otherwise" meaningless. "Otherwise" refers to the protection afforded religious speech by section 4071(a). Thus, the phrase "otherwise unlawful" in section 4071(d)(5) is most logically understood as authorizing schools to bar meetings that are unlawful for reasons *other* than their religious content.

We must read section 4071(d)(7) in the context of the entire Act. The provisions of sections 4071(c) and (d) are almost uniformly concerned with preventing an unconstitutional application of the Act. *See* section 4071(c)(1) (requiring that any religious meetings be voluntary); sections 4071(c)(1), (3) and (5) (prohibiting schools from participating in or sponsoring religious meetings); sections 4071(d)(1), (2), and (4) (prohibiting schools from influencing the content of prayer, requiring prayer, or forcing school personnel to attend meetings); section 4071(d)(3) (barring the use of public funds for religion beyond the incidental cost of providing space for meetings). None of these provisions purports to allow exceptions to the Act. Rather, they explicitly exclude from the Act's protection "the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (*quoting Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970)). Congress hardly inserted a sweeping exception to the Act within its perimeters. Section 4071(d)(7) is a "savings"

clause that protects against reading implications into the EAA which might abridge federal constitutional rights, either for persons and schools within its scope, or for those outside its scope, such as secondary school teachers and elementary school students.

The Supreme Court confronted a similar task of statutory interpretation in *Mergens*. *See* 496 U.S. at 237, 110 S.Ct. at 2365. The plaintiffs requested permission from school' officials to form a Christian club at Westside High School. Westside denied the request and the students brought suit, claiming that the denial violated their rights under the EAA and the United States Constitution. The school board claimed that it did not have a limited open forum because all of its clubs were curriculum related. *See id.* at 232–33, 110 S.Ct. at 2362–63.

The Supreme Court looked to the legislative purpose of the Act to determine the meaning of "noncurriculum related". The Court found that the Act reflected "at least some consensus on a broad legislative purpose." *Id.* at 239, 110 S.Ct. at 2366. The Court noted that Congress "intended [the Act] to address perceived widespread discrimination against religious speech in public schools," and that "its sponsors contemplated that the Act would do more than merely validate the status quo." *Id.* The Court held that "[a] broad reading of the Act would be consistent with the views of those who sought to end discrimination by allowing students to meet and discuss religion before and after classes." *Id.*

The school board argues that *Mergens* does not control our interpretation of sections 4071(d)(5) and (7) because the decision only determined the meaning of "noncurriculum related". The Court did more than that. It determined that the entire Act must be read to effectuate a broad Congressional purpose.

The Court rejected a narrow interpretation of "noncurriculum related clubs" because it would have resulted either in almost no schools being subject to the Act, or it would have permitted schools to strategically evade the Act. *Id.* at 244, 110 S.Ct. at 2368. Similarly, the school board's inter-

pretation of 4071(d)(5) and (7) would likely exempt from the Act many schools in the Ninth Circuit and in the country. The EAA would apply only in states that did not have laws that prohibited religious student groups from meeting on school grounds. Many states have establishment clauses that are more restrictive than the federal establishment clause. *See* Note, *Beyond the Establishment Clause: Enforcing Separation of Church and State Through State Constitutional Provisions,* 71 Va.L.Rev. 625, 632–33 (1985). These state constitutional provisions might bar religious meetings on school grounds. States that are currently subject to the Act could "evade the Act" by enacting laws or interpreting their state constitutions to prohibit religious meetings on school grounds. Under the school board's interpretation of "otherwise unlawful", a school could prohibit religious speech on the basis of any legal prohibition, not just state law. Thus, cities and other political subdivisions of the state could circumvent the Act as well. The Court rejected similar results in *Mergens,* 496 U.S. at 244, 110 S.Ct. at 2368.

The Court's finding of a broad legislative purpose suggests that Congress intended to preempt state law: "Congress clearly sought to prohibit schools from discriminating on the basis of the content of a student group's speech, and that obligation is the price a federally funded school must pay if it opens its facilities to noncurriculum related student groups." *Mergens,* 496 U.S. at 241, 110 S.Ct. at 2367. The Act permits schools to avoid its obligations, but only at a price. They must either reject federal funding or close the school's limited open forum. *See id.* If the EAA did not preempt state law, than states could freely opt out of its requirements. Congress did not intend to permit the states to thwart its objectives by outlawing speech based on its religious content, and thereby discriminate on that basis.

Both the students and the school district rely on the Act's legislative history to support their interpretation. We have reviewed the legislative history of the EAA and agree with the Supreme Court that it is "less than helpful". 496 U.S. at 238, 110 S.Ct. at 2365. The bill that led to the Act went through a series of revisions. During the negotiations that led to the Act's passage, many of the legislators changed positions. Thus the statements of individual Senators do not necessarily reflect Congressional purpose. *Id.; see also* Laycock, *Equal Access and Moments of Silence: The Equal Status of Religious Speech by Private Speakers,* 81 Nw.U.L.Rev. 1, 37–39 (1986).

## CONCLUSION

State constitutions can be more protective of individual rights than the federal Constitution. *See, e.g., PruneYard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). However, states cannot abridge rights granted by federal law. *Northwest Central Pipeline,* 489 U.S. at 509, 109 S.Ct. at 1273. Regardless of whether we agree with the Congressional balancing of state sovereignty and federal concerns, "[o]ur task is to apply the text, not to improve on it." *Mergens,* 496 U.S. at 241, 110 S.Ct. at 2367 (citations omitted). The EAA provides religious student groups a federal right. State law must therefore yield.

The students have a right under the EAA to meet on school property on the same basis as other noncurriculum related clubs. Because our decision is controlled by the EAA, we need not reach the students' federal constitutional claims.

Reversed.

Each side shall bear its own costs.

FARRIS, Circuit Judge, Concurring:

Judge McGovern concluded that the Washington State Constitution bars religious student groups from meeting on public high school campuses. I agree. I join the majority only because I am equally convinced that Congress intended to preempt state law. Congress has decided that the right of individual student groups to meet on campus outweighs the right of the citizens of Washington to maintain strict separation between church and state.

The Supreme Court has held that the Establishment Clause does not afford protection against this exercise of Congressional power. *See Board of Education v. Mergens,* 496 U.S. 226, 253, 110 S.Ct. 2356, 2373, 110 L.Ed.2d 191 (1990).

The result is no minor intrusion on state sovereignty. Nonetheless, I write to emphasize that Washington State still retains a modicum of control over its public school system. Although the state may not be in a position to reject federal funding, it can close its limited open forum by restructuring its course offerings and existing student groups. *See id.* at 241, 110 S.Ct. at 2367.

I am satisfied that Judge McGovern properly concluded that the Washington State Constitution prohibits the relief requested by the students. Article I, section 11 provides:

> No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment.

Article IX, section 4 forbids any sectarian influence in the public schools:

> All schools maintained or supported wholly or in part by the public funds shall be forever free from sectarian control or influence.

The use of public school property for religious club meetings violates Article I, section 11. In *Perry v. School District No. 81,* 54 Wash.2d 886, 344 P.2d 1036 (1959), the Washington Supreme Court held that a program permitting students to be released for religious study off school premises violated the state constitution. The school announced the program on school bulletin boards and distributed cards on which students could express interest in participating in the program. The court held that even this minimal appropriation of school facilities and personnel to distribute the cards constituted an impermissible "use of school facilities supported by public funds for the promotion of a religious program." *Id.* at 896, 344 P.2d 1036.

The Lindbergh High School religious club requests a much more substantial use of school facilities and funds than that allocated in *Perry.* The *Mergens* Court held that the EAA requires schools to permit student religious groups to meet on the same terms as other student groups that are part of the limited open forum. 496 U.S. at 247, 110 S.Ct. at 2370. Therefore, Lindbergh must allow the student religious group "access to the school newspaper, bulletin boards, the public address system, and the annual Club Fair," *id.,* if the school permits other student groups to do the same. The school would need to assign a teacher to each meeting of the student religious club for custodial purposes. The Washington Supreme Court flatly rejected a more minimal use of school facilities and personnel in *Perry.* Moreover, the Washington Supreme Court cited with approval the district court's interpretation of the Washington constitution in *Garnett I. Witters v. Comm'n for the Blind,* 112 Wash.2d 363, 771 P.2d 1119, 1122 n. 11, *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989).

The Washington Supreme Court held in *Weiss v. Bruno,* 82 Wash.2d 199, 211, 509 P.2d 973, that "Const. art. 9, 4 does not provide that a minimal amount of sectarian control or influence is permissible." Religious student groups will exert powerful influences upon high school students. Congress apparently fails to recognize that certain "religious" groups may divert public schools from their basic educational mission. *See* Lorraine Pecarsky, *Coping: The Cult Phenomenon,* Washington Post, July 22, 1981, B5. A democratic society need not fear an open forum, but there is a sound basis for the barrier erected by Article IX, section 4 of the Washington State Constitution. It does not bar an open exchange of ideas. It merely restricts "religious" groups from meeting on school grounds. The EAA overrides that bar.

The state may restructure its curriculum to avoid the obligations of the Act. *See Mergens,* 496 U.S. at 241, 110 S.Ct. at 2367. But there was a time when it would not have been required to do so as the price for enforcing its state constitution and obtaining critical federal funds.

As the district court correctly noted, state constitutions can be more protective of individual rights than the federal Constitution. *See, e.g., PruneYard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). For today, Congress has made it more difficult, but not impossible, for a state to maintain a sturdier wall between church and state than the barrier recognized by the Supreme Court. The Establishment Clause has not yet been relegated to history. "But the signs are evident and very ominous, and a chill wind blows." *Webster v. Reproductive Services,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (Blackmun, J., concurring in part and dissenting in part).